**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **RHONDA A. RYANS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. 1:11-CV-46(MTT)** |
| ) | |
| **DR. SALLY WHATLEY,** *et al.,* ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

## ORDER

This matter is before the Court on the Defendants' Motion for Summary Judgment. (Doc. 41). For the reasons set forth below, the motion is **granted**.

## I.  PROCEDURAL BACKGROUND

Pro se Plaintiff Rhonda Ryans filed her initial compliant on March 28, 2011, alleging that various individual Defendants discriminated against her based on her gender and retaliated against her for her complaints of discrimination. (Doc. 1). Ryans also asserts various state law claims. According to Ryans, the Defendants' conduct violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and Georgia state law. On July 7, 2011, the Court convened a discovery conference. At that conference, the parties agreed that the individual Defendants were not the proper parties to respond to Ryans' claims based on federal law. Accordingly, on July 15, 2011, the Court entered an order substituting the Dougherty County School System ("DCSS") as the Defendant for Ryans' federal law claims. (Doc. 29). Pursuant to that same order, the Court directed Ryans to supplement her complaint to provide a clear statement of the factual and legal bases of her

claims.  Ryans filed her supplemental complaint July 26, 2011.[1]  (Doc. 30).  On February

29, 2012, the Defendants moved for summary judgment on all claims.  After Ryans

responded to the Defendants' motion, the Court ordered the Defendants to reply, which they

did on May 30.  Ryans filed her sur-reply on June 11.

## II.  FACTUAL BACKGROUND

Rhonda Ryans has worked for DCSS in some capacity since 2002 or 2003.  (Doc.

43 at 8).  In August 2005, she began working as a paraprofessional at South Georgia

Regional Achievement Center ("SGRAC") in Albany, Georgia.[2]  While employed at SGRAC,

Ryans claims she was sexually harassed in December 2005 by Venorris Bradley, another

DCSS employee.  Ryans claims she complained to Superintendent Sally Whatley in April or

May 2007, but that Superintendent Whatley instructed her to first voice her complaints to

the principal, pursuant to DCSS policy.  (Doc. 30 at 11).  On December 17, 2007, Ryans

claims she met with Venorris Bradley, Assistant Superintendent Carlos Keith, and Principal

John I. Davis to discuss the alleged harassment, but that no action was ever taken.  (Doc.

30 at 12-13).  On March 18, 2008, Ryans filed a charge of discrimination with the Equal

Employment Opportunity Commission alleging she was sexually harassed, subjected to a

hostile work environment, and retaliated against for complaining of the alleged harassment

("EEOC Charge 1").  (Doc. 43-1 at 65).  Ryans received a notice of right to sue from the

EEOC on or about July 21, 2010.  (Doc. 43-1 at 66).

---

[1] Ryans' supplemental complaint is not particularly helpful.  It is written in stream of consciousness style, with no apparent regard for organizational, strategic, or even logical clarity.

[2] In her sur-reply, Ryans asserts she began working at SGRAC in 2006 as a certified health and physical education teacher.  (Doc. 51 at 2).  This contradicts information she provided in her first EEOC charge that she began at SGRAC in 2005 as a paraprofessional and is just one example of Ryans' inconsistent allegations.  (Doc. 43-1 at 65).

During this time, Ryans remained employed at SGRAC.  On October 15, 2009, she claims she filed a grievance against Principal Davis complaining of continued discrimination and retaliation.  Neither Ryans nor the Defendants have produced a copy of this alleged grievance.[3]  On November 4, 2009, Ryans claims, Office Manager Annette Jenkins made false accusations that Ryans was leaving school premises without signing out.  Ryans also accuses Jenkins of falsifying and forging documents.  (Doc. 30 at 15-16).  Two days later, on November 6, Ryans claims Counselor Audrey Simmons Davis made false accusations over the phone to Human Resources Director Tracy Williams regarding an alleged argument between Audrey Davis and Ryans.[4]  (Doc. 30 at 16).  There also may have been some type of informal meeting among these parties the same day.

On January 17, 2010, Ryans filed another charge of discrimination with the EEOC ("EEOC Charge 2").  (Doc. 43-1 at 68).  In EEOC Charge 2, Ryans claims she was discriminated against because of her sex and retaliated against for filing EEOC Charge 1 and the grievance against Principal Davis in October 2009.  Specifically, she claims that between October 1 and November 6, 2009, her "terms and conditions of employment [were] different from those of [her] male co-workers in that [she was] denied compensation time, excluded from staff photos, required to sign out when leaving campus, denied travel devices and computer information and [her] copied documents were shredded."  (Doc. 43-1 at 68).  Ryans also claims she was reprimanded on November 6, 2009, and that she was "not

---

[3] In its May 15, 2012, order, the Court directed the Defendants to submit a copy of this grievance.  In reply, the Defendants assert there is no record of any grievance submitted by Ryans pursuant to DCSS' official grievance policy.  (Doc. 47 at 9).  Principal Davis, in his affidavit, confirmed that he was not aware, nor was he ever notified, of any complaint filed against him.  (Doc. 48 at 3).  The Defendants did submit a letter dated November 23, 2009, and addressed to Human Resources Director Tracy Williams, in which Ryans complained of several instances of alleged harassment. (Doc. 47-1).  Ryans never mentions this document in any of her filings.

[4] Ryans does not explain how she acquired knowledge of the content of this telephone call.

allowed to work in the Phoenix Program inside Phoenix Hall," meaning that her classroom was located outside the building in a portable unit.  (Doc. 43-1 at 68).  The EEOC issued a notice of right to sue regarding EEOC Charge 2 on January 3, 2011.  (Doc. 43-1 at 69).

In March 2010, Ryans was notified by then-Superintendent Whatley that she was being placed on 10-day paid administrative leave and that she was to undergo a "fit-for-duty" assessment with Dr. Cheryl Kaiser.  (Doc. 43-1 at 72).  Ryans underwent the assessment on March 12, 2010.  On April 7, 2010, Ryans was informed via letter that she was being transferred from SGRAC to Lamar Reese Elementary Magnet School of the Arts ("Lamar Reese").  (Doc. 43-1 at 86).  In that letter, Superintendent Whatley stated that Ryans had been involved in numerous incidents at SGRAC during the 2009-2010 school year that detracted from her "ability to provide effective classroom instruction."  (Doc. 43-1 at 86).  Among the incidents cited were Ryans' "irreconcilable differences with Dr. John I. Davis, Principal; [she] refused to allow Ms. Tracy Williams, Human Resources Director, to assist [her]; there ha[d] been problems with colleagues at [her] school; and [she] alleged that a Dougherty County School System police officer broke into [her] vehicle."  (Doc. 43-1 at 86).

On October 1, 2010, after working at Lamar Reese for approximately six months, Ryans received notice that she would be suspended from Lamar Reese pending a hearing to determine whether further action would be taken.  (Doc. 43-1 at 85).  The disciplinary infractions cited in the letter included "tardiness for required district meetings and refusal to accept assistance and guidance in delivering physical education to assigned students; lack of performance regarding planning and delivering effective physical education at Lamar Reese Magnet School of the Arts; your disagreeable and often threatening behavior toward other teachers and staff; your recent more bizarre behavior involving an insistence on

wearing a backpack at all times during instruction and your blatant refusal to respond to questions and directives from the Principal, Dr. Valerie Thomas."[5]  (Doc. 43-1 at 85).  By agreement of the parties, the hearing was delayed until February 21, 2011.  On the day of the hearing, the matter was settled between the parties and memorialized in a document entitled "Settlement Agreement," which was eventually signed and dated by Ryans on March 21, 2011.  (Doc. 43-1 at 70-71).  Pursuant to the agreement, Ryans' pay was reinstated as of December 8, 2010; her teacher's certification was reinstated retroactive to the date of its suspension, June 30, 2010; and she remained a DCSS employee.  (Doc. 43-1 at 70).  A week later, on March 28, 2011, Ryans filed this lawsuit.[6]

## III.  DISCUSSION

### A.    Summary Judgment Standard

Summary judgment must be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "A factual dispute is genuine only if 'a reasonable jury could return a verdict for the nonmoving party.'"  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)).  The burden rests with the moving party to prove that no genuine issue of material fact exists.  *Info. Sys. & Networks Corp*, 281 F.3d at 1224.  The district court must

---

[5] Elsewhere, Ryans claims Principal Thomas and Assistant Principal George Graham falsified documents and made "false" and "untruthful" statements to Superintendent Joshua Murfree in order to get her suspended.  (Doc. 45-2 at 15; Doc. 30 at 26).

[6] Ryans has since been transferred to Albany Early College, another school within the DCSS.

"view all evidence in the light most favorable to the nonmoving party, and resolve all reasonable doubts about the facts in its favor." *Id.*

## B.   EEOC Charge 1

In EEOC Charge 1, Ryans contends she was sexually harassed, subjected to a hostile work environment, and retaliated against for complaining of the alleged harassment. The Defendants argue that all claims raised in Ryans' initial EEOC charge are time barred because she failed to file suit within 90 days of receiving the right-to-sue notice.

"Before instituting a Title VII action in federal district court, a private plaintiff must file an EEOC complaint against the discriminating party and receive statutory notice from the EEOC of his or her right to sue the respondent named in the charge." *Forehead v. Fla. State Hosp. at Chattahoochee*, 89 F.3d 1562, 1567 (11th Cir. 1996). The administrative charge must be filed within 180 days of the alleged discrimination. 42 U.S.C. § 2000e-5(e)(1). In addition to filing a timely EEOC charge, a plaintiff who wishes to bring a lawsuit in federal court must do so within ninety days of receiving her right-to-sue notice from the EEOC. 42 U.S.C. § 2000e-5(f)(1).

Ryans filed EEOC Charge 1 on March 18, 2008. The evidentiary materials indicate that the EEOC sent Ryans a right-to-sue letter concerning the allegations in EEOC Charge 1 on July 21, 2010. It is also undisputed that Ryans did not file her lawsuit until March 28, 2011, 250 days after the EEOC mailed her notice of right to sue. Thus, Ryans clearly failed to file suit within Title VII's 90-day mandate. Unless some equitable exception applies, the claims asserted in EEOC Charge 1 are time barred.

As a basis for avoiding application of the 90-day time bar, Ryans claims she was told on several occasions by EEOC representatives handling her charge that her case would be

"amended." (Doc. 30 at 21; Doc. 43-1 at 8).  Presumably, this "amending" process would delay the running of the 90-day limitations period until some later date and allow Ryans to file suit on the claims asserted in EEOC Charge 1 regardless of right-to-sue dates.  Ryans cites no legal precedent for this argument, nor has she provided any documentation or corroborating testimony from anyone at the EEOC.  As an alternative basis for tolling, Ryans claims she wanted to mediate her claim and that she did not file suit within 90 days because she was waiting for mediation.  (Doc. 43 at 21).  However, she later admitted that she understood neither party was obligated to submit the claims to mediation.  (Doc. 43 at 25-26).

To the extent Ryans argues she was misled or that she misunderstood the filing requirements, she is not entitled to equitable tolling.  Even crediting her claim that an EEOC representative told her that her case would be "amended," there is no evidence that this advice discouraged or prevented Ryans from bringing suit in federal court after she received the right-to-sue letter.  To the contrary, on July 21, 2010, the EEOC mailed Ryans a right-to-sue notice stating unequivocally that she must file suit within 90 days of its receipt.  (Doc. 43-1 at 66).  Moreover, in her deposition, Ryans admitted that she was told by an EEOC representative that "once I close your case then you have to start a new charge" and that "once he closed it out and sent [her] a charge letter that means everything is going forward." (Doc. 43-1 at 8).  The fact that Ryans may have misunderstood Title VII's temporal requirements or thought the 90-day rule, for whatever reason, did not apply in her case offers no relief; pro se status and ignorance of the law are not a basis for equitable tolling. *Robinson v. Schafer*, 305 Fed. Appx. 629, 630 (11th Cir. 2008) (holding that "the liberal construction given to pro se pleadings does not mean liberal deadlines").  Having failed to establish the applicability of some equitable exception, Ryans is not entitled to a tolling of

the 90-day limitations period.  Accordingly, the claims asserted in EEOC Charge 1 – sexual

harassment, hostile work environment, and retaliation for complaining of alleged

harassment – are time barred, and the Defendants are entitled to summary judgment

thereon.

## C.     EEOC Charge 2

Ryans filed EEOC Charge 2 on January 17, 2010.  The EEOC issued a notice of

right to sue concerning EEOC Charge 2 on January 3, 2011, and Ryans filed this lawsuit

March 28, 2011, clearly within the 90-day limitations period.  Thus, any potential problem

with this charge lies not in the timing of the charge or her lawsuit, but rather in deciphering

what claims Ryans is trying to assert.

As noted above, a plaintiff must file a charge of discrimination with the EEOC prior to

filing a Title VII action in federal court.  *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277,

1279 (11th Cir. 2004).  The purpose of the exhaustion requirement is to allow the EEOC

"the first opportunity to investigate the alleged discriminatory practices to permit it to perform

its role in obtaining voluntary compliance and promoting conciliation efforts."  *Id.* (internal

quotation marks and citation omitted).  "EEOC regulations provide that charges should

contain, among other things, '[a] clear and concise statement of the facts, including

pertinent dates, constituting the alleged unlawful employment practices.'"  *Alexander v.

Fulton Cnty., Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000) (internal quotation marks and

citation omitted), *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304, 1328 n. 52

(11th Cir. 2003).  Although courts are to liberally construe EEOC charges prepared by pro

se litigants, a "plaintiff's judicial complaint is limited by the scope of the EEOC investigation

which can reasonably be expected to grow out of the charge of discrimination." *Id.* (internal quotation marks and citation omitted).

In EEOC Charge 2, Ryans claims that between October 1 and November 6, 2009, her "terms and conditions of employment [were] different from those of [her] male co-workers in that [she was] denied compensation time, excluded from staff photos, required to sign out when leaving campus, denied travel devices and computer information and [her] copied documents were shredded." She also claims she was reprimanded on November 6, 2009, and that she was "not allowed to work in the Phoenix Program inside Phoenix Hall," meaning that her classroom was located outside the building in a portable unit. The charge concludes with Ryans' belief that she was "discriminated against because of [her] sex and retaliated against for [her] opposition to acts made unlawful by Title VII."

Based on the plain language of EEOC Charge 2, Ryans appears to have asserted only claims of disparate treatment (that she was treated less favorably in various ways than her male coworkers) and retaliation (that she was retaliated against for complaining of discrimination in either EEOC Charge 1, the October 2009 grievance, or both). Though she never explicitly argues otherwise, it is clear from the face of EEOC Charge 2 that the charge does not contain a hostile work environment claim, and even when liberally construed, such a claim does not arise out of that charge.[7]  Accordingly, the only judicial claims arising from EEOC Charge 2 are claims of disparate treatment and retaliation.

---

[7] In several of her filings, Ryans explains in great detail the facts she believes give rise to her various claims, often concluding with the assertion that she "had to work in a hostile work environment." (Doc. 45-2 at 13).  While the court "is to employ less stringent standards in assessing pro se pleadings … than would be used to judge the final product of lawyers, this leniency does not permit the [Court] to act as counsel for a party or to otherwise rewrite deficient pleadings."  *Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 Fed. Appx. 274, 276-77 (11th Cir. 2008).  Ryans never argues that

### D.     Events Occurring After EEOC Charge 2

Throughout her complaint, deposition, and summary judgment briefs, Ryans references several events occurring after she filed EEOC Charge 2.  Those events include her suspension from SGRAC, being required to undergo a fit-for-duty assessment, her transfer from SGRAC to Lamar Reese, and her suspension from Lamar Reese.

The Defendants argue that events occurring after Ryans filed EEOC Charge 2 in January 2010 constitute "discrete events requiring a new EEOC Charge."  (Doc. 47 at 6).  Because Ryans did not file an EEOC charge covering these events, the Defendants claim, these allegations should be dismissed and excluded from the lawsuit.  In response, Ryans claims she did in fact file an EEOC charge concerning these events, but that she does not have a copy of the charge nor has she received a right-to-sue letter.  (Doc. 43 at 31-36).  She does not state when she filed this alleged charge or what allegations were included in the charge.

Although the Defendants are correct that, generally, a plaintiff must first present a complaint of discrimination to the EEOC before she may bring suit in federal court, there is a narrow exception to this general rule for certain retaliation claims.  In *Baker v. Buckeye Cellulose Corp.*, the Eleventh Circuit stated that "it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier [EEOC] charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court."  856 F.2d 167, 168-69 (11th Cir. 1988) (internal quotation marks and citation omitted).  Because it "is the nature of retaliation claims that they arise after the filing of the EEOC charge … [r]equiring prior resort to the

EEOC Charge 2 should be read to include a hostile work environment claim, and the Court will not make that argument for her.

EEOC would … serve no purpose except to create additional procedural technicalities when a single filing would comply with the intent of Title VII." *Id.* at 169.

Here, EEOC Charge 2 is properly before the Court.  Thus, construing her complaint liberally, Ryans has asserted claims involving the following post-EEOC Charge 2 events: her suspension from SGRAC, the fit-for-duty test, and her transfer to and suspension from Lamar Reese.  The scope of those claims will be limited to Ryans' claim that these actions were taken against her in retaliation for filing EEOC Charge 2.

### E.   Title VII & the *McDonnell Douglas* Framework

Ryans brings claims of gender discrimination and retaliation under Title VII.  Like most victims of alleged job discrimination, she relies on circumstantial evidence and the framework for analyzing circumstantial evidence first applied in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[8]  Under the *McDonnell Douglas* test, a plaintiff must first establish a prima facie case of discrimination, the test for which differs slightly for Ryans' disparate treatment and retaliation claims.  If a plaintiff establishes a prima facie case of discrimination, the burden of production, but not the burden of persuasion, shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981).

"Should the employer meet its burden of production, the presumption of discrimination is rebutted, and the inquiry 'proceeds to a new level of specificity,' in which the plaintiff must show that the proffered reason really is a pretext for unlawful discrimination." *EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1273 (11th Cir. 2002)

---

[8] Ryans does not actually "rely" on *McDonnell Douglas*, insofar as she has not cited that or any other legal precedent.

(internal quotation marks and citation omitted).  "Title VII does not require the employer's needs and expectations to be objectively reasonable; it simply prohibits the employer from discriminating on the basis of membership in a protected class.  We do not sit as a super-personnel department, and it is not our role to second-guess the wisdom of an employer's business decisions – indeed the wisdom of them is irrelevant – as long as those decisions were not made with a discriminatory motive.  That is true no matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers."  *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266-67 (11th Cir. 2010) (internal quotation marks and citation omitted).

At the summary judgment stage, an employee can meet this burden by producing evidence "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision."  *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997).  If a defendant articulates more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive summary judgment.  *Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1308 (11th Cir. 2007).

### i.    Disparate Treatment

Ryans claims that between October 1 and November 6, 2009, her "terms and conditions of employment [were] different from those of [her] male co-workers in that [she was] denied compensation time, excluded from staff photos, required to sign out when leaving campus, denied travel devices and computer information and [her] copied documents were shredded."  She also claims she was "reprimanded" on November 6, 2009, and that she was "not allowed to work in the Phoenix Program inside Phoenix Hall,"

meaning that her classroom was located outside the building in a portable unit.       To establish a prima face case of disparate treatment under Title VII, Ryans must show that (1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) her employer treated similarly situated male employees more favorably.  *McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008).  The Defendants do not dispute that Ryans satisfied the first and second elements of a prima facie case of disparate treatment.  Thus, the Court only considers whether there is a genuine issue of material fact as to whether any of the acts complained of constitute adverse employment actions and, if so, whether a similarly situated male employee was treated more favorably.

"To prove an adverse employment action … an employee must show a *serious and material* change in the terms, conditions, or privileges of employment.  Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances."  *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis in original).  "[N]ot all conduct by an employer negatively affecting an employee constitutes adverse employment action."  *Id.* at 1238.  And while an adverse employment action need not result in a decrease in pay, "the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment."  *Id.* at 1239.

Of the allegations included in EEOC Charge 2, only Ryans' claim of being "denied compensation time" rises to the level of an adverse employment action within the meaning of Title VII.  With regard to the remaining allegations – excluded from staff photos, required to sign out when leaving campus, denied travel devices and computer information, copied

documents were shredded, reprimanded, and moved to a classroom in a portable unit –
Ryans has not proffered any evidence that these actions triggered any form of tangible
adverse effect on her employment.  Several of the allegations are not explained at all, and
those that are described are done so in a conclusory and often confusing manner.  For
example, in Principal Davis' affidavit, he claimed to not understand what actions Ryans was
referring to in several of her claims.  (Doc. 48 at 2).  In her sur-reply, Ryans responded
simply by stating that the "defendant is well aware of the photo copies of the plaintiff that
were shredded, the plaintiff's computer information being denied and of plaintiff's 'travel
devices' being taken off of Mrs. Tanya Grant's desk." (Doc. 51 at 4).  Ryans never explains
what "photo copies" were shredded or who shredded them;[9] she never explains what
"computer information" is or who denied it; and she never explains what "travel devices" are
or who denied them.  Although Ryans may subjectively perceive these actions as
significantly adverse, when viewed by a reasonable person in the circumstances, they have
not been shown to have constituted a serious and material change in the terms, conditions,
or privileges of her employment.  Only Ryans' claim of being "denied compensation time,"
which the Court generously construes as some form of reduced or withheld pay, constitutes
an adverse employment action and, consequently, only that claim proceeds to the next step
of the prima facie case.

---

[9] At one point in her sprawling supplemental complaint, Ryans states that Ms. Diane Daniels "*by design* purposely lost or (possibly shredded) the Plaintiff's certification documentation/file." (Doc. 30 at 23) (emphasis and parenthesis in original).  She alludes to losing her teaching certificate several other times throughout her deposition and briefs.  While the Court must view the evidence and all reasonable factual inferences arising from it in the light most favorable to Ryans, "an inference is not reasonable if it is only a guess or a possibility, for such an inference is not based on the evidence but is pure conjecture and speculation."  *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir. 1982) (internal quotation marks and citation omitted).  Ryans has no evidence that Daniels purposely lost or shredded her certification documentation.  Like several of Ryans' claims, this statement is pure conjecture and is not credible evidence of discrimination or retaliation.

The final element of Ryans' prima facie case requires her to demonstrate that she was treated less favorably than a similarly situated male employee.  The Eleventh Circuit recently affirmed, however, that a "plaintiff's failure to produce a comparator does not necessarily doom her case."  *Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1255 (11th Cir. 2012) (quoting *Smith v. Lockheed-Martin*, 644 F.3d 1321, 1328 (11th Cir. 2011)).  Rather, "a plaintiff may use non-comparison circumstantial evidence to raise a reasonable inference of intentional discrimination and thereby create a triable issue."  *Id.* (internal quotation marks and citation omitted).  "Whatever form it takes, if the circumstantial evidence is sufficient to raise a reasonable inference that the employer discriminated against the plaintiff, summary judgment is improper."  *Id.* at 1256 (internal quotation marks and citation omitted); *see also Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (finding summary judgment appropriate if the plaintiff fails to identify a similarly situated employee *and* no other evidence of discrimination is present).

Here, Ryans does not even attempt to identify a male employee who was not denied compensation time, as she claims she was.  She also has not produced any other circumstantial evidence that the denied compensation time, or any of the alleged adverse employments actions cited in EEOC Charge 2, was due to her gender.  The only time she mentions compensation is in her response, in which she states, "Because of plaintiff's complaint(s) the plaintiff '*after school bus duty*' and Saturday School Teaching jobs for which the plaintiff received '*extra pay*' was taken from her."  (Doc. 45-2 at 12-13) (emphasis in original).  Thus, even Ryans appears to assert that the alleged denial of "extra pay" was due to her filing complaints, not her gender.  Put another way, Ryans' claim of denied compensation time is one of retaliation, not disparate treatment.  Regardless, Ryans has failed to identify a proper comparator or to present to the Court any other circumstantial

evidence that gender discrimination played a role in the adverse employment actions she claims she suffered.  She has failed to establish a prima facie case of disparate treatment, and on this claim, the Defendants are entitled to summary judgment.

    ii.    **Retaliation**

Title VII also prohibits an employer from retaliating against an employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  The *McDonnell Douglas* burden-shifting framework also applies in retaliation cases.  To establish a prima facie case of retaliation, a plaintiff must show that (1) she engaged in statutorily-protected expression; (2) she suffered an adverse employment action; and (3) there was some causal connection between the two events.  *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001).  If Ryans makes out a prima facie case of retaliation, the burden shifts to the Defendants to articulate legitimate, nonretaliatory reasons for the adverse employment actions, and, if the Defendants do so, Ryans has the ultimate burden of showing that the Defendants' stated reasons are pretextual.

Ryans alleges she was retaliated against for filing EEOC Charge 1, the alleged October 2009 grievance, and EEOC Charge 2.  Generally, "protected expression" includes both complaints filed with the EEOC and those filed through an employer's internal grievance procedure.  *Gerard v. Bd. of Regents of State of Ga.*, 324 Fed. Appx. 818, 825 (11th Cir. 2009).  Thus, even though there are questions regarding the October 2009 grievance, the Court finds that Ryans engaged in protected activity for purposes of Title VII's anti-retaliation provision.

As to the second element, to constitute an adverse employment action, the action "must be harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). "While not everything that makes an employee unhappy is an actionable adverse action, conduct that alters an employee's compensation, terms, conditions, or privileges of employment does constitute adverse action under Title VII." *Bass v. Bd. of Cnty. Comm'rs*, 256 F.3d 1095, 1118 (11th Cir. 2001) (internal quotation marks and citation omitted). Under the holding of *Burlington Northern*, the relevant inquiry for the Court is whether the employment action is one a reasonable employee would have found to be materially adverse. *Burlington Northern*, 548 U.S. at 68.

In EEOC Charge 2, Ryans alleges to have suffered the following adverse employment actions: denied compensation time, excluded from staff photos, required to sign out when leaving campus, denied travel devices and computer information, copied documents were shredded, reprimanded, and required to work outside the building in a portable unit. The Court will also consider the following actions, identified above in Section "D. Events Occurring After EEOC Charge 2:" suspended from SGRAC, required to undergo a fit-for-duty assessment, transferred to Lamar Reese, and suspended from Lamar Reese.

The Court's discussion of adverse employment actions with regard to Ryans' disparate treatment claim applies with equal force here.[10]   Accordingly, of the first group of

---

[10] The Court acknowledges that the Supreme Court's decision in *Burlington Northern* relaxed the standard for proving an adverse employment action in retaliation claims and, consequently, that the standards used in retaliation and discrimination claims are in fact distinct and different. *See Crawford v. Carroll*, 529 F.3d 961, 974 n.14 (11th Cir. 2008). Nonetheless, in this situation, Ryans' failure to coherently explain and argue her case again works to her detriment. Even considering the employment actions collectively, as Eleventh Circuit precedent permits, does not affect the Court's analysis. *Akins v. Fulton Cnty., Ga.*, 420 F.3d 1293, 1301 (11th Cir. 2005).

employment actions – those listed in EEOC Charge 2 – only "denied compensation time" can be construed as an action a reasonable employee would have found to be materially adverse.  With regard to the post-EEOC Charge 2 actions, the Defendants set forth no argument, and the Court will assume those actions constitute adverse employment actions.

The final element of Ryans' prima facie case requires her to prove a causal link between the protected activity and the adverse employment actions.  A causal link can be established by showing that "the protected activity and the adverse action were not wholly unrelated."  *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999) (internal quotation marks and citation omitted).  A plaintiff can satisfy this element if she "provides sufficient evidence that the decision-maker became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action."  *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999).  However, "the temporal relationship between the protected activity and the adverse employment action must be 'very close.'  Even a three-month interval between the protected expression and the employment action … is too long.  *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).  And while a close temporal proximity may be sufficient to create an issue of fact regarding the causal connection prong, "temporal proximity *alone* is insufficient to create a genuine issue of fact as to causal connection where there is unrebutted evidence that the decision maker did not have knowledge that the employee engaged in protected conduct."  *Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) (emphasis added).

To the extent Ryans attempts to argue a causal link between any adverse employment actions and EEOC Charge 1, the argument lacks merit.  EEOC Charge 1 was

filed March 18, 2008.  Though Ryans does not specify when exactly she was "denied compensation time," in EEOC Charge 2 she claims those actions occurred between October 1 and November 6, 2009.  The post-EEOC Charge 2 acts beginning with her suspension from SGRAC did not begin until mid-to-late March 2010.  Thus, approximately one and one half to two years passed between the filing of EEOC Charge 1 and the adverse employment actions.  These allegedly retaliatory acts are too far removed to establish an inference of causation.  The Defendants are entitled to summary judgment on any retaliation claims using EEOC Charge 1 as a foundation.

Ryans also faces causation problems regarding the alleged October 2009 grievance.  Ryans has no evidence, other than her own argument, that she filed this grievance.  She has not produced a copy of the grievance nor does DCSS have a record of any grievance against Principal Davis being filed pursuant to DCSS' official grievance policy.  (Doc. 47 at 9).  Principal Davis confirmed in his affidavit that he was not aware, nor was he ever notified, of any grievance filed against him pursuant to DCSS policy.  (Doc. 48 at 3).  Although Ryans claims she can "verify" that Principal Davis received the grievance, she has not offered any *evidence* which contradicts the Defendants' asserted lack of knowledge.  As noted above, Ryans bears the burden of showing that the decision-maker was actually aware of the protected conduct at the time of the adverse action.  She has not met this burden, and, as a result, the October 2009 grievance cannot serve as a basis for Ryans' retaliation claims.

The Defendants did submit a letter dated November 23, 2009, and addressed to Human Resources Director Tracy Williams, in which Ryans complained of several instances of alleged harassment.  (Doc. 47-1).  However, as noted above, Ryans claims she was "denied compensation time" sometime between October 1 and November 6, 2009.  She

could not have been retaliated against on November 6, 2009, for a grievance filed November 23, 2009.  Also, any connection between a November-filed grievance and the post-EEOC Charge 2 events beginning in mid-to-late March 2010 is too attenuated to infer a causal link based solely on temporal proximity.  Finally, Principal Davis is the alleged decision-maker with regard to these actions, and there is no evidence that he was aware of this letter at the time the employment actions were taken.  For these reasons, the November 23 letter cannot serve as a basis for Ryans' retaliation claims.

That leaves only EEOC Charge 2 and Ryans' claims involving events occurring after its filing.  Ryans filed EEOC Charge 2 on January 17, 2010.  In March and April 2010, she was temporarily suspended from SGRAC, required to undergo a fit-for-duty assessment, and transferred to Lamar Reese Elementary School.  On or about October 1, 2010, Ryans was suspended from Lamar Reese, pending a hearing to determine whether further action would be taken.  The hearing was eventually held on February 21, 2011.  Construing her complaint liberally, Ryans claims each of these actions was in retaliation for filing EEOC Charge 2.

Ryans' suspension from Lamar Reese in October 2010 and her appearance before the school board in February 2011 occurred nine and thirteen months after she filed EEOC Charge 2 and are too temporally distant to establish a causal connection.  Those claims fail.  However, the time between Ryans' filing of EEOC Charge 2 and the events surrounding her suspension from SGRAC and transfer to Lamar Reese is short enough to satisfy the Eleventh Circuit standard.  Ryans has therefore established a prima facie case only with regard to these claims, and the burden of production shifts to the Defendants to articulate legitimate, nonretaliatory reasons for their actions.

Here, even assuming that Ryans could establish a prima facie case with regard to all of the adverse actions she complains of (even those the Court has found do not constitute adverse employment actions as that term is defined under Title VII and those without a causal connection to any protected expression), the Defendants have come forward with legitimate, nonretaliatory reasons for their actions.  In affidavits, SGRAC Principal John Davis and then-Lamar Reese Principal Valerie Overstreet-Thomas offer explanations for the actions affecting Ryans while she was employed at their respective schools.  "As to requiring her to sign out when she leaves campus," Principal Davis claims, "that is school policy and applies to all teachers and personnel.  She was not singled out and required to sign in and out because she is a woman or because she complained about Venorris Bradley.  If Ms. Ryans was ever excluded from a photo made of the staff it was inadvertently.  We do not have an official staff photo for her to have been excluded from." (Doc. 48 at 2).  As to Ryans claim that she was "denied compensation time," Principal Davis asserts that she was likely referring to "an hour a day of overtime pay that she was receiving at one time for 'extended day' supervision of … children who had to wait for the bus to pick them up.  Later, the bus schedule was changed and the bus was able to pick these students up at the normal time, meaning teachers were no longer needed that extra hour."  Two male teachers were affected by this change as well.  (Doc. 48 at 2).

Regarding her suspension from SGRAC, the fit-for-duty evaluation, and her transfer to Lamar Reese, both Principal Davis and Superintendent Whatley cite Ryans' general inability to get along with her co-workers.  (Doc. 48 at 2; Doc. 43-1 at 86).  They claim she often argued with other employees and that these repeated incidents distracted her from providing effective classroom instruction.  (Doc. 48 at 2; Doc. 43-1 at 86).  Her "erratic behavior" led to the fit-for-duty evaluation and later, in hopes that a new environment may

improve matters, her transfer to Lamar Reese.  (Doc. 48 at 2; Doc. 43-1 at 86).  However, according to Principal Thomas, the problems continued at Lamar Reese.  (Doc. 49 at 1-2).  Principal Thomas attached several email conversations to her affidavit indicating a general hostility towards even the mildest criticism or display of authority.  (Doc. 49 at 5-13).  Like Davis and Whatley, Principal Thomas also noted Ryans' difficulties with her co-workers.  (Doc. 49 at 1-2).  Finally, regarding Ryans' suspension from Lamar Reese, Principal Thomas recounted an incident in which Ryans refused to remove her backpack throughout the day, even while she was teaching P.E. classes.  After being called to the office to speak with Principal Thomas and Assistant Principal Graham about the bag, Ryans grew defiant and angry and refused to open the bag or tell them what was inside.  During another conversation in which Principal Thomas was attempting to diffuse an argument between Ryans and a co-worker, Ryans interrupted Principal Thomas by singing a gospel or spiritual song.  According to Principal Thomas, these were the reasons she chose to suspend Ryans from Lamar Reese.  (Doc. 49 at 1-3).  This evidence is sufficient to satisfy the Defendants' burden of production, and the burden shifts to Ryans to show that the Defendants' stated reasons are pretextual.

Ryans attempts to create an issue of material fact regarding whether or not she actually engaged in the various instances of misconduct the Defendants cite as reasons for the actions taken against her.[11]  Throughout her complaint, during her deposition, and in her various summary judgment briefs, Ryans claims, in one way or another, that "she was not acting erratically, belligerent, insubordinate or any other way unbecoming a educator/professional."  (Doc. 51 at 6).  She claims the Defendants' explanations are

---

[11] In many cases, there was no misconduct at all, but rather simply a change in school policy that Ryans misconstrues as some elaborate conspiratorial scheme devised to "destroy" her or to cover up the Defendants' alleged wrongdoings.

"deceptive, misleading, and untruthful" and are part of a "strategically designed process to ruin the Plaintiff's life."[12]  (Doc. 51 at 1; Doc. 30 at 27).

Ryans cannot succeed in showing the Defendants' reasons for their actions are pretextual by simply quarrelling with the wisdom of those reasons.  The appropriate inquiry for this Court is not whether Ryans was actually guilty of misconduct, but whether the Defendants gave an honest explanation for their behavior and whether the stated reasons are ones that might motivate a reasonable employer.  *Chapman v. AI Transport*, 229 F.3d 1012, 1030-31 (11th Cir. 2000).  Although Ryans may disagree with the Defendants' decisions and interpretation of her behavior, she has not put forth sufficient evidence to show that their explanations are unworthy of credence.[13]  Accordingly, she has failed to prove pretext, and the Defendants are entitled to summary judgment on Ryans' retaliation claims.

### F.     State Law Claims

Although the Defendants moved for summary judgment on Ryans' state law claims as well, neither party addressed those claims in any detail.  Because the Court has granted summary judgment to the Defendants on all federal law claims over which it has original

---

[12] Nearly all of Ryans' filings contain accusations that Venorris Bradley, Principal Davis, Superintendent Whatley, and others are "close friends" and/or "familial acquaintances."  She alleges that these individuals and others are "co-conspirators" and that their actions display unethical "nepotism."  Albany, Georgia is not a large community.  That some individuals who work for DCSS are "close" is not surprising, and absent additional support, certainly is not evidence of a conspiracy.

[13] Throughout this action, Ryans has begged the Court to allow her to proceed to trial so that she may present her case to a jury and "bring out the whole truth of plaintiff's case."  (Doc. 51 at 2).  She repeatedly states that her claims can be "validated through witnesses and/or court transcriptions." (Doc. 30 at 7).  She talks of video recordings, audio recordings, and numerous other forms of evidence proving her claims.  By and large, however, none of this evidence is in the record, and Ryans' assurances that evidence proving her case will be presented at trial are not sufficient to withstand summary judgment.

jurisdiction, it declines to exercise supplemental jurisdiction over any state law claims.  28 U.S.C. § 1367(c).  Thus, to the extent Ryans has asserted any claims pursuant to Georgia law, those claims are **dismissed without prejudice**.

## IV. CONCLUSION

The Court has drawn all reasonable inferences in Ryans' favor and given to her every benefit available to those proceeding without the assistance of counsel.  Nonetheless, she has failed in several critical respects to come forward with evidence sufficient to allow her claims to proceed any further.  For the reasons set forth above, the Defendants' Motion for Summary Judgment is **granted**.  The Court declines jurisdiction over Ryans' state law claims and **dismisses** those claims **without prejudice**.

**SO ORDERED,** this 8th day of August, 2012.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT